## AMERICAN CASUALTY & LIFE CO. v. GUERINGER et al.

### No. 11718.

Court of Civil Appeals of Texas. San Antonio.

June 11, 1947.

Rehearing Denied July 16, 1947.

Robert Lee Bobbitt and Ralph W. Brite, both of San Antonio, for appellant.

Edward W. Halbardier, of San Aantonio, for appellees.

NORVELL, Justice.

This is a suit upon a hospital insurance policy which contained the following insuring clause:

"The Insurance hereunder is against loss due to Hospital Residence * * * (b) resulting from sickness the cause of which had its beginning after this policy had been maintained in force for not less than thirty days from the date of issue hereof * * *."

The insurance company also contracted to return all premiums paid in the event of the death of the insured.

The policy sued upon was issued to Mrs. Olivia Gueringer by American Casualty and Life Company on January 21, 1944. Mrs. Gueringer died on December 20, 1945, at the Santa Rosa Hospital in San Antonio, Texas.

The trial court rendered judgment for appellees, the heirs at law of the insured, for the sum of $312, of which $29 was for premiums paid and the balance was for hospitalization under the provisions of the policy. In answer to one special issue the jury found from a preponderance of the evidence that "the cause of the hospitalization of Olivia Gueringer did not have its origin prior to February 20, 1944."

The controlling point upon this appeal is raised by appellant's motion for judgment non obstante veredicto, wherein it is asserted that the evidence shows as a matter of law that Mrs. Gueringer's hospitalization "resulted from sickness the cause of which had its beginning not less than thirty days from the date of the policy," January 21, 1944.

The cause of death was carcinoma, a form of cancer. In April of 1943 Mrs. Gueringer submitted to a radical surgical operation for the removal of a cancerous breast. From the time Mrs. Gueringer recovered from this operation until May of 1945, she was apparently in good health, according to lay witnesses. On May 17, 1945, Mrs. Gueringer consulted Dr. S. W. Allen and remained under his professional care until her death. The deposition of Dr. Allen was taken and appellant's contention that its motion for judgment non obstante veredicto should have been granted is based upon Doctor Allen's testimony. As the details of the nature and progress of the disease of cancer are not subjects of either common or judicial knowledge and Doctor Allen was the only medical expert to testify in the case, we are restricted to his testimony in regard to these matters, although Doctor Allen did not claim to be a specialist upon the disease of cancer. His specialty was surgery and he stated that he did not "know much about cancer, except that they are dangerous things."

As to the nature and causes of cancer, Doctor Allen testified: "You see they are

little cell rests made up of little cells, there are some in my body, in your body, every one of us have them, and some of them never grow and some of them do start growing, could start growing in you, me, one of us, today. What starts them I don't know, * * *. I couldn't say that we all have it, but are all likely to have. * * * It is there, I am getting into deep water when I say it, but in cancer there are little cell rests in our body, little nests of cells, and something stimulates those to grow and they grow and it is cancer. Now, we may all have them, or one of us may have them, but then the incident of cancer increases as you grow older and if we live long enough, in time we will develop one of these, that is the opinion. * * * Two hundred years, or something, and I think nature puts that there in case something else dosen't kill us, that will."

The doctor refused to state that Mrs. Gueringer had cancer in January of 1944. He did say that "she had the cell nests, which originated from the original cancer of the breast, but I don't think they were growing at that time, in 1944, because having seen her in May, 1945, and not even being able to detect them, and she dying that same year with it all over her body. I don't think that could have spread that fast if they had been active at the time you mention, the date you mention in '44."

According to Dr. Allen, the medical profession does not regard the disease of cancer as being present because of the existence in the body of cell rests or "seeds" which may become cancerous. In regard to this matter, particularly as regards Mrs. Gueringer, the testimony is as follows:

"Q. So that at the time this policy was taken out, actually she didn't have cancer, is that right? A. She didn't have any active cancer, if it isn't active then you don't call it cancer, until it goes to growing and you are able to identify it as that, and then it is cancer.

"Q. In other words then, you don't attempt to say that she had cancer on January 14th, at the time that this policy of insurance was taken out? A. That is correct.

"Q. And you don't attempt to say that she had any cancerous condition until the time that it was diagnosed up in the hospital, in 1945, isn't that correct? A. That is the first time that we were sure, but I was sure that that was what it was.

"Q. Now, what I mean, you were sure, but— A. That anybody could be sure that it was cancer.

"Q. You say there isn't any cancer until it is active, is that correct? A. Until it starts growing, the cells may be there.

"Q. So then your testimony has been merely to distinguish, so to speak, between a seed that might exist in anybody, and the active growth of that seed, when it becomes active, begins to grow, then you call it cancer? A. That is right.

"Q. And until it is active, until that date, it is not cancer? A. That is right."

"In considering the sufficiency of the evidence to sustain the findings we are required to disregard all evidence adverse thereto and consider only evidence favorable to the findings, indulging every legitimate conclusion which tends to uphold such findings." Barrick v. Gillette, Tex.Civ. App., 187 S.W.2d 683, 686; Texas Prudential Ins. Co. v. Knighten, Tex.Civ.App., 186 S.W.2d 843; Owens v. Row, Tex.Civ. App., 178 S.W.2d 144.

Applying the rule above stated, we hold that the jury could have legitimately concluded from the evidence, that from the date of the surgical operation (1943) until shortly before May of 1945, Mrs. Gueringer was not suffering from the disease of cancer, although she may have had "cell rests" present in her body which might result in cancer.

The insuring clause of the contract must be given a common sense construction. We must assume the parties intended to enter into an enforcible insurance contract. As the seeds of death are sown when the first breath of life is drawn, and flesh is subject to corruption, we can not say that the parties intended to exclude all diseases which might develop by reason of the presence in the insured's body of malignant bacteria, disease germs, or "cell rests" which may at some later date develop

426

into a lethal force and cause serious illness and death. We therefore conclude that the word "beginning" as used in the phrase, "which (sickness) had its beginning," has reference to an illness or medically recognized disease and not merely to a condition which might in the future give rise to a disease. The controlling question is: Was Mrs. Gueringer, on February 20, 1945 (thirty days after the date of the policy), suffering from the disease of cancer which later caused her disability and consequent hospitalization?

█ Under the evidence, the jury could reasonably conclude that she was not. And this, despite the further testimony of Dr. Allen that the terminal illness was metastatic carcinoma, which seemingly is a type or form of cancer that develops in one portion of the body and is transferred or passes to another part thereof, and is usually preceded by a localized tumorous growth. While Dr. Allen testified that the terminal disease undoubtedly "had its origin" in the previous localized cancer of the breast, it is apparent that such evidence cannot be given effect in reference to the construction of the insurance policy. This opinion involves the acceptance of the theory that the "beginning" or the origin of the disease may be inactive "cell rests." This concept must be rejected for the reason that its adoption along with its logical implications would effect a destruction of the insuring clause.

We hold that the trial court properly overruled appellant's motion for judgment non obstante veredicto and that the finding of the jury is not against the overwhelming preponderance of the evidence.

█ Complaint is made of the jury argument of appellees' attorney. With the substitution of the word "origin" for "beginning," the court submitted the issue in substantially the same wording as that appearing in the insurance policy. Appellees' attorney pointed out that Mrs. Gueringer's application for insurance stated that her left breast had been removed by a surgical operation, that the insurance company had nevertheless accepted the risk and collected premiums upon the policy, and should not now contend that the cancer of the breast was the origin of the claim for hospitalization. An objection to this line of argument was sustained by the trial judge and the jury instructed not to consider it.

Appellees' attorney also stated:

"Gentlemen, I submit to you and ask you if every policy could not be defeated on that same basis as an occurrence the result of an illness that had its origin before, that by virtue of some wholly argumentative strained construction as they attempt to place on this—I am not going to waste any further words on this point, but I am going to submit these instructions to you and ask you that by your verdict you place this type of cases on notice that you gentlemen as jurors in this county will not—"

Here an objection was made and sustained and the jury instructed not to consider the argument.

In our opinion no reversible error is disclosed. Considering the charge of the court, it were perhaps natural that conflicting constructions thereof would be argued to the jury. We are of the opinion that all possible prejudice resulting from such argument was removed by the court's instructions to the jury.

We have examined all of appellant's points. None of them discloses a reversible error. The judgment is affirmed.