INTERNATIONAL SECURITY LIFE IN-SURANCE COMPANY, Appellant,

v.

Raymond D. KAMP et al., Appellees.

No. 7203.

Court of Civil Appeals of Texas, Beaumont.

Dec. 17, 1970.

A. J. Bryan, Fort Worth, Gillispie & McClendon, Lubbock, for appellant.

Kirby, Ratliff & Sansom, Littlefield, for appellee.

KEITH, Justice.

The insurer appeals from a judgment in favor of the plaintiffs awarding benefits under a policy of hospitalization insurance, penalties, interest, and attorney's fees. Trial was to a jury and three points are brought forward for review, the insurer having abandoned one point upon oral submission of the cause.

■ In Point One, the insurer contends that it was error for the court to overrule its motion for judgment non obstante veredicto "because the uncontradicted evidence shows that the sickness" originated prior to the effective date of the policy. In passing upon this point, we consider only the evidence favorable to the finding. The second point contends that "the overwhelming weight of the evidence is that appellee's sickness originated prior to the effective date of the policy." Treating this point as one raising the factual insufficiency of the evidence [Garza v. Alviar, 395 S.W.2d 821, 823 (Tex.Sup., 1965)], we consider the record as a whole. We consider the points together.

In a very general way, the insurer pleaded that the claim sued upon by plaintiffs was not within the coverage of the policy, the allegations being set forth in the margin.* The pleading cast upon the plaintiffs the burden of proving that the sickness did not originate before the date of issuance of the policy. Sherman v. Provident American Insurance Company, 421 S. W.2d 652, 654 (Tex.Sup., 1967). The policy involved was issued on February 28, 1968, and in consideration of an extra month's premium paid at that time, it bore a rider amending the policy "by elimination of all waiting periods for benefits due to sickness which is contracted and begins after the Effective Date of said policy." Mrs. Kamp was hospitalized from September 25 to October 5, 1968, where she was operated on twice by Dr. Robert J. Salem.

Dr. Salem testified that when she was admitted to the hospital, her complaints

---

* "Defendant specially denies that it is liable for any part of Plaintiff's claim and would show that Policy No. MM–7134 covers accidental injuries occurring after the issue date and sickness, the cause of which originates after the effective date of the policy. Defendant says the sickness necessitating Plaintiff's confinement and treatment was pre-existing and therefore not covered by such policy."

"centered around some difficulty with the colon and anus and also some symptoms referable to the bladder and vagina." He performed two separate surgical procedures, the first being "for repair of a severe stricture of the anus and rectum, and the second surgical procedure * * * consisted of a repair of a cystocele and a rectocele, through a vaginal approach." Dr. Salem had not treated Mrs. Kamp previously nor did he have any knowledge of her condition prior to the time of her hospitalization and the surgical procedures which he described.

On cross-examination, Dr. Salem described the two procedures and said that the rectal problem had been present for some time, these being his words:

" * * * it is very difficult to determine time. Certainly several months, however, I suppose it could have been as long as two or three years.

     *     *     *     *     *     *
"Although this is something that could have just developed. As I say, it is just impossible to say."

Dr. Salem was not too positive upon redirect examination as to the time of on-set of the illness of Mrs. Kamp, saying that it was "a severe stricture, and that these things usually don't develop, when they are this bad, over a short period of time. But, here again, it is an educated guess, and in most general circumstances, I think with a stricture of this nature, that will be true." He further testified that Mrs. Kamp might have had the anal stricture and not experience most of the sympstoms; and doubted if she would be in a good position "to tell when this anal stricture first began." Finally, upon redirect, he said that "usually, when they get severe enough, they will cause symptoms, but we have seen milder ones that might be present and not cause any significant symptoms."

Insofar as the cystocele and the rectocele procedures were concerned, Dr. Salem contented himself with stating that they "were not as severe as the rectal problem, and I don't think had been as long standing as the first [anal] problem."

Dr. Chatwell, Mrs. Kamp's regular physician, was called by the insurance company and gave testimony concerning his treatment of her over the years, but did not give testimony as to prior complaints of an anal stricture or complaints of the cystocele or rectocele. Two anesthesiologists, testifying by deposition, did not touch the subject of the present inquiry.

Mrs. Kamp testified that her condition relating to her bowel movements was of recent origin, a matter of about three weeks, and that she had no trouble before that time. She did admit to having had a colon operation about eighteen years before the trial and had undergone other surgical procedures during her lifetime. She maintained that she had not had any trouble with her colon for many years, except a condition which she described as "nervous colon."

The jury found that the disease or sickness for which Mrs. Kamp underwent surgery—on each occasion sued upon—"did not originate prior to February 28, 1968, the effective date of the insurance policy sued upon." The insurer's motion for judgment non obstante veredicto, addressed to these two findings insofar as material hereto, was duly filed, presented, and overruled.

There is no serious dispute between the testimony of Dr. Salem and that of Mrs. Kamp which a careful analysis does not dispel. Dr. Salem's hypothesis that the origin of the anal stricture was of long standing is not, necessarily conflicting with Mrs. Kamp's complaints felt shortly before her hospitalization. There is nothing in our record, other than the educated guess of Dr. Salem, which would have authorized the jury to find that her illness antedated the policy. Thus, we come to the consideration of the cases cited by the plaintiffs in support of the judgment, since we do not

find that the insurer's two cases are of much aid.

It was stated in Associated Employers Lloyds v. Self, 192 S.W.2d 902, 904 (Tex. Civ.App.—Dallas, 1946, no writ), that lay testimony, although controverted by expert medical testimony based upon hypothetical conclusions, may be sufficient to sustain controlling causation issues. In a suit upon a policy of hospitalization benefits, the late Judge Norvell, while upon the Court of Civil Appeals, in Reserve Life Ins. Co. v. Kelly, 266 S.W.2d 395, 396–397 (Tex.Civ.App.—San Antonio, 1954, error dism.), said:

> "We think the evidence properly raised the issue. Undoubtedly Kelly was a competent witness as to the condition of his health and freedom from sickness. Vann v. National Life & Accident Ins. Co., Tex.Com.App., 24 S.W.2d 347. The jury was not required to accept the conclusion of the medical expert which in this case was rather uncertain and speculative. This is not a case in which lay testimony is not competent, nor is it a case wherein it can be said that reasonable minds cannot differ as to the conclusion contended for by appellant. American Casualty & Life Co. v. Butler, Tex.Civ.App., 215 S.W.2d 392; American Casualty & Life Co. v. Gueringer, Tex.Civ.App., 205 S.W.2d 423."

Chief Justice Dixon, in Reserve Life Ins. Co. v. Everett, 275 S.W.2d 713, 716 (Tex.Civ.App.—Dallas, 1955, error ref. n. r. e.) motion for rehearing overruled, 276 S.W.2d 926, disposed of a similar contention. There, Mrs. Everett had testified that she had not been ill nor had she had any nervous or mental diseases prior to her hospitalization. Her doctor was not positive in his testimony as to whether the disease was of old or recent origin. The court said:

> "We think her testimony [that of Mrs. Everett, the plaintiff] was of a kind that a layman may give, especially when testifying about his or her own health."

The evidence so received was found sufficient to support the jury's verdict.

Our courts have adopted the rule stated by the text-writer in 45 C.J.S. Insurance § 893, pp. 968, 972, which permits a recovery under such type of policy when the illness first manifests itself after the prescribed waiting period, notwithstanding the medical cause thereof antedated the inception of the policy. Old National Ins. Co. v. Johnson, 312 S.W.2d 715 (Tex.Civ.App.—Austin, 1958, no writ); Abel v. Occidental Life Ins. Co. of Cal., 410 S.W.2d 451, 453 (Tex.Civ.App.—Fort Worth, 1966, error ref. n. r. e.). In addition to the authorities cited in Johnson, supra, see: American Casualty & Life Co. v. Butler, 215 S.W.2d 392 (Tex.Civ.App.—Galveston, 1948, error ref. n. r. e.); American Casualty & Life Co. v. Gueringer, 205 S.W.2d 423 (Tex. Civ.App.—San Antonio, 1948, no writ). Points One and Two are overruled.

■ The final point brought forward for our consideration contends that the jury's finding of $1,000.00 as a reasonable fee for Mrs. Kamp's attorney is excessive, lacks support in the evidence, and the insurer suggests that the fee should not be in excess of $500.00.

In fixing the amount of the attorney's fees allowed under Article 3.62, Insurance Code, V.A.T.S., the court is authorized to take into consideration all benefits to the insured incident to the prosecution of the suit, accrued and to accrue on account of such policy. In reviewing this point, we note that the insurer had sought cancellation of the policy and the first issue (containing four subdivisions) submitted this theory of defense to the jury. Upon unfavorable answers to the insurer, judgment was rendered denying cancellation and rescission of the policy—a benefit (presumably) to Mrs. Kamp. Additionally, she recovered $1,003.45 as benefits, $120.41 as statutory penalty, and her attorney's fees as fixed by the jury. Admittedly, the statute authorizing the assessment of attorney's fees is penal in nature [McFarland v.

Franklin Life Ins. Co., 416 S.W.2d 378, 379 (Tex.Sup., 1967)], but it does allow fees in the proper case.

Trial counsel for plaintiffs testified as to his efforts in the case and a local lawyer gave expert opinion testimony based upon the factual basis therefor. His opinion was that between $900.00 and $1,000.00 would be a reasonable fee under the circumstances. The jury found the maximum, $1,000.00. Under a record presenting the converse of our situation, i. e., where the trial judge allowed *less* than the expert witness had testified was a reasonable fee, the court, in Harlow v. Southern Farm Bureau Casualty Ins. Co., 439 S.W. 2d 365, 368 (Tex.Civ.App.—Austin, 1969, error ref. n. r. e.), laid down the applicable rule, saying:

"It is the responsibility of the trier of the facts to determine what is the reasonable value of an attorney's services. Here the court tried the case, heard evidence relating to the time and value of the services rendered Appellant and had knowledge of all other attending circumstances. Gulf Paving Co. v. Lofstedt, 144 Tex. 17, 188 S.W.2d 155 (1945). While the record contains uncontradicted testimony by an attorney witness as to what the value of the services were worth, opinion evidence as to the correct amount of attorney's fees should be, even though uncontradicted, is not binding and conclusive on the trial court. Head v. Hargrave, 105 U.S. 45, 26 L.Ed. 1028; 5 American Jurisprudence, Attorney's at Law, Section 192. We hold that the trial court did not abuse his discretion here."

The amount found by the jury was within the limits of the evidence presented to the jury. The same question as to excessiveness was presented to the trial court and the motion for new trial was overruled. We have reviewed the record and do not find that the sum awarded is excessive under the record as presented. The point is overruled.

Finding no error in the record, the judgment of the trial court is in all things affirmed.