**REPUBLIC BANKERS LIFE INSURANCE COMPANY, Appellant,**

v.

**C. F. MORRISON and wife, Ruth Morrison, Appellees.**

No. 8106.

Court of Civil Appeals of Texas, Texarkana.

Oct. 24, 1972.

Rehearing Denied Nov. 14, 1972.

Thomas L. Cook, Beard & Kultgen, Waco, for appellant.

Coy Johnson, Sulphur Springs, for appellees.

RAY, Justice.

C. F. Morrison and wife Ruth Morrison, appellees (plaintiffs), brought suit against Republic Bankers Life Insurance Company, appellant (defendant) to collect benefits due under an insurance policy. The insurance company issued its policy covering Morrison and wife, agreeing to pay certain benefits in the event either party was hospitalized. Thereafter, Ruth Morrison was hospitalized in the Gaston Episcopal Hospital and Baylor University Medical Center in Dallas and appellee C. F. Morrison in Hopkins County Memorial Hospital. Appellant denied the claims of appellees, and this suit resulted. The claim of C. F. Morrison was settled. Trial was before a jury for costs of Ruth Morrison's confinements, totaling $759.95, and for the twelve per cent statutory penalty and reasonable attorney's fees. The jury answered all issues favorably to appellees, and judgment was entered in accordance with the verdict. Appellant insurance company timely filed its appeal to this court, urging six points of error.

On November 23, 1967, appellant Republic Bankers Life Insurance Company issued its new Gold Star non-cancellable-guaranteed renewable for life-hospital, surgical and medical policy covering C. F. Morrison and wife, Ruth Morrison. Appellant plead that the sickness for which Ruth Morrison was hospitalized originated either before the issue date of the policy or within six months after the date of issue; that is, it originated before May 23, 1968, and did not come under the coverage of the policy. Appellant's policy contained the usual ex-

clusion which in substance states that no indemnities shall be payable under the policy for any loss or disability unless the cause thereof originates after the policy has been in force for six months. The defense urged by appellant insurance company was that the illnesses for which Ruth Morrison was hospitalized on two different occasions originated before May 23, 1968, and would therefore not be covered by the policy. Mrs. Morrison was hospitalized on September 19, 1968, and underwent an operation for the removal of a goiter. She was again hospitalized on January 13, 1969, at which time surgery was performed removing an extruded disc.

Appellant's points of error I and II concern the first hospitalization of Mrs. Morrison on September 19, 1968. It is urged by appellant that no evidence was introduced which would support the jury finding that the sickness for which Ruth Morrison was hospitalized the first time did not originate before May 23, 1968; and, secondly, that the finding of the jury that the sickness originated after May 23, 1968, was so contrary to the great weight and preponderance of evidence as to be clearly wrong. Appellant did not raise any points concerning the factual insufficiency of the evidence as outlined by Chief Justice Robert W. Calvert in his article, "No Evidence and Insufficient Evidence," 38 Tex.Law Rev. 361, 366 (1960). This article makes it clear there is a difference in points on "factual insufficiency of the evidence" and "great weight and preponderance of the evidence" points. Insufficiency points are those on which the factual evidence presented is too weak to support a jury verdict. Great weight and preponderance of the evidence points are those on which there is so much evidence presented contrary to the jury findings as to make the jury's verdict manifestly wrong.

Appellant very candidly points out in his brief:

"On direct examination, Ruth Morrison testified that some 27 years before she took out the insurance policy she had been treated for thyroid trouble; that she did not have any treatment for thyroid trouble from that time until she went into the hospital; that she had not had any trouble with her throat until shortly before she entered the hospital in September, 1968; that a few days before she entered the hospital she sneezed and it felt like her throat was bursting; and that she had a bad choking sensation and could not swallow too well."

Mr. Morrison testified that he had never heard his wife complain of anything being wrong with her throat or neck for a number of years. A friend of Ruth Morrison for twenty years testified that she had never heard Ruth Morrison complain of anything being wrong with Ruth Morrison's neck. The medical records of Gaston Episcopal Hospital indicate in the "history" and "discharge summary" dated September 19, 1968, and September 27, 1968, respectively, that appellee started having trouble with her goiter approximately two years before she was admitted for the thyroidectomy. After the medical records were introduced, Mrs. Morrison testified that they were in error for the reason she had not experienced thyroid trouble two years before giving the histories to the doctors and nurses. Mrs. Morrison testified that 27 years before the appellant's policy was issued she suffered some throat trouble or thyroid trouble, but it was of a short duration, and she had no further trouble until shortly before she entered the hospital on September 19, 1968. It was her further testimony that her family physician of twenty-one years had never treated her for thyroid trouble nor given her any medicine for thyroid trouble.

We think the evidence was sufficient to raise the issue of whether or not the sickness for which Ruth Morrison was hospitalized on September 19, 1968, originated before May 23, 1968. Since the evidence was sufficient to raise the issue, appellant's point of error No. I (the no evidence point) is overruled.

■ After a thorough review of the testimony and evidence in this case, we have concluded that appellant's point of error No. II (the great weight and preponderance of the evidence point) should also be overruled. While it is true that the evidence was conflicting as to when Mrs. Morrison's goiter again started giving her trouble, that was a matter for the jury to resolve. Since the jury resolved the issue in favor of Mrs. Morrison, we cannot say there was so much evidence in the record to the contrary as to conclude that the jury was manifestly wrong in arriving at its verdict. Appellee Ruth Morrison was competent to testify as to the condition of her health and her freedom from sickness until shortly before she entered the hospital in September of 1968. The jury was not required to accept the medical histories as being free from error. We therefore conclude that the evidence was sufficient to sustain the jury verdict concerning the hospitalization of September 19, 1968. Reserve Life Ins. Co. v. Kelly, 266 S.W.2d 395 (Tex.Civ.App. San Antonio 1954, dism'd); International Security Life Insurance Company v. Kamp, 462 S.W.2d 63 (Tex.Civ.App. Beaumont 1970, writ dism'd); 45 C.J.S. Insurance § 893, pp. 968, 972. Recovery could be had under the terms of the policy in this case when the illness first manifested itself after the prescribed waiting period, notwithstanding the medical cause thereof may have antedated the inception of the policy. International Security Life Insurance Company v. Kamp, supra.

■ Appellant's points of error III and IV relate to the hospitalization of Mrs. Morrison on January 13, 1969. The points urged are "no evidence" and "contrary to the great weight and preponderance of the evidence" respectively, contending that the evidence established that Mrs. Morrison had an extruded disc before May 23, 1968. Mrs. Morrison's testimony was that she slipped on a waxed floor in January 1969, just a few days before she entered the hospital at Baylor University Medical Center in Dallas. Mr. Morrison testified that his wife slipped, fell and wrenched her back around the 1st of January 1969, and they both testified that she had nothing wrong with her back on November 23, 1967, when she took out the policy, nor for the first six months after the policy was issued. A friend of Mrs. Morrison testified that she had never heard Ruth Morrison complain about her back. Ruth Morrison testified that she had hurt her back in August of 1968, "or the first of September while she was working in the yard doing some cleaning up, fixing flower beds and different things like cutting grass back around from the flowers." She testified that it didn't bother her much after that until she slipped and fell. On cross-examination, appellant's counsel asked Mrs. Morrison:

"Q. So you have had back trouble before, is that correct?

A. I had a slipped disc."

A thorough review of the other testimony in the case would not establish that Mrs. Morrison had suffered a slipped disc prior to May 23, 1968. The jury could well have concluded that the slipped disc of which Mrs. Morrison was speaking occurred in August 1968 or January 1969. Apparently, counsel for appellant drew the same conclusion, since he did not pursue it with any further questions.

The jury having resolved the conflicting testimony and evidence in favor of appellee Morrison, we cannot say as a matter of law that the evidence established that the illness for which Ruth Morrison was hospitalized on January 13, 1969, originated before May 23, 1968. Appellant's point of error No. III is overruled.

We conclude that the evidence was sufficient to raise the issue of whether or not the disc injury was sustained after May 23, 1968, and the jury having so found that it did occur after May 23, 1968, we hold the evidence was sufficient to sustain the jury's finding on the conflicting testimony and evidence. Appellant's fourth point of

error is overruled upon the preceding authorities cited.

We find no merit in appellant's points of error V and VI. Appellant urges in point of error No. V that the trial court erred in rendering judgment for appellees because the verdict of the jury awarding $1,500.00 as a reasonable attorney's fee was against the great weight and preponderance of the evidence. By point of error No. VI appellant states that the attorney's fee awarded was excessive as a matter of law in the amount of $750.00.

■■ The undisputed testimony is that appellee's counsel worked on this case over a period of two and one-half years and spent a minimum of fifty hours in its preparation. Art. 3.62 of the Texas Insurance Code, V.A.T.S., permits recovery of reasonable attorney's fees by the insured in the event a life, health and accident insurance company fails to pay a loss within thirty days after demand therefor if the company is held to be liable for the loss in the suit. We hold that a reasonable attorney's fee in such cases would be at least the amount prescribed in the current suggested State Bar Minimum Fee Schedule for the preparation and trial of a civil case. Had appellee's counsel charged the very minimum of $40.00 per hour, he would have been entitled to a fee of $2,000.00. We think the fee awarded in the sum of $1,500.00 is rather modest. Counsel for appellee would have been entitled to an additional fee for representing his client in this appeal if he had so requested it in the trial court. International Security Life Insurance Company v. Spray, 468 S.W.2d 347 (Tex.Sup.1971). Not having asked for an additional fee makes the initial fee of $1,500.00 even more reasonable. If there were to be any criticism of appellee's counsel, it would not be in the manner in which he represented his client, but that he slighted himself in the amount charged for representing his client. It is incumbent upon the members of the Bar of this State to spend the necessary time to adequately represent their clients. It follows as a matter of human course that if the attorney charges less than the suggested minimum fee he is likely to be unprepared at the trial of his client's cause. Clients deserve to have confidence in their counsel, and counsel deserve to be paid an adequate fee for services rendered. Appellant's points of error V and VI are overruled. We hold that the amount awarded as attorney's fees in this case was not excessive as a matter of law and that the evidence was sufficient to sustain the jury's verdict. Green v. Rudsenske, 320 S.W.2d 228, 235 (Tex.Civ.App. San Antonio 1959, no writ); Texas Consolidated Transportation Company v. Eubanks, 340 S.W.2d 830 (Tex.Civ.App. Waco 1960, writ ref'd n. r. e.); City of Austin v. Selter, 415 S.W.2d 489, 502 (Tex.Civ.App. Austin, 1967 writ ref'd, n. r. e.).

The judgment of the trial court is affirmed.