**EAST TEXAS LIFE AND ACCIDENT IN-SURANCE COMPANY, Appellant,**

v.

**George H. CARVER, Appellee.**

**No. 7749.**

Court of Civil Appeals of Texas.

Texarkana.

July 12, 1966.

Rehearing Denied Aug. 30, 1966.

Will D. Pace, Tyler, for appellant.

Sidney Lee, Texarkana, for appellee.

CHADICK, Chief Justice.

This is a suit to collect hospitalization benefits provided by a family group hospitalization insurance policy. The judgment of the trial court is affirmed.

George H. Carver, husband of Tressie Carver a member of the family group covered by the insurance policy, sued East Texas Life and Accident Insurance Company for hospitalization benefits, penalty and attorney fees aggregating $321.14, and for interest from date of judgment, costs, etc., in a District Court of Bowie County.*

* County court jurisdiction is transferred to the District Courts of Bowie County by Art. 1970–306, Vernon's Ann.Tex.Civ.St.

The facts were developed in the course of a jury trial. The effective date of the insurance policy was May 28, 1964. Among the exceptions, limitations and reductions applicable to the insurance coverage is this:

"Part VIII.
* * *

3. Any sickness which results in a surgical operation shall be covered only if the cause thereof originated after this policy has been in force for six months.
* * *"

Mrs. Tressie Carver underwent surgery December 8, 1964.

The single ultimate fact issue raised by the evidence was whether or not the cause of sickness requiring a surgical operation on Tressie Carver originated on or before November 28, 1964, the day the policy was in force for a period of six months. The trial judge's written charge contained this instruction:

"To aid you in answering the immediately foregoing special issue, you are instructed that the cause of a sickness or disease originates when such sickness or disease first becomes manifest or active; *and not necessarily at the earlier time when the medical cause of the disease may have begun or had its origin.* The words sickness and disease mean a medically recognized sickness or disease and not merely a condition which might in the future give rise to a sickness or disease." (Appellant's objection is focused on the language emphasized here).

The language preceding the semicolon in the first sentence of this instruction aptly expresses the legal concept that for the purposes of this insurance contract the cause of a disease originates when the disease first becomes manifest or active. American Casualty & Life Company v. Gueringer (Tex.Civ.App.1947), 205 S.W.2d 423, no writ; see also Annotation: Insurance—Inception of Sickness, 53 A.L.R.2d 689, where it is said: "* * * the illness, disease, or disability will ordinarily be deemed to have its inception when it first becomes manifest or active or when there is a distinct symptom or condition from which one learned in medicine can, with reasonable accuracy, diagnose the disease."

Appellant finds no fault with the forepart of the first sentence of the instruction but its brief makes the barren charge that the language following the semicolon constitutes an attempt to ignore the plain meaning of the policy's provision and rewrite the contract, and that the instruction "obviously confused and misled" the jury to the detriment of the appellant. The brief does not detail, illustrate, or suggest the changes in the plain meaning of the policy the instruction caused, nor is a source or evidence of jury confusion delineated. This criticized clause of the first sentence of the instruction appears to have been designed by the trial court to forestall misunderstanding in the application of the legal concept expressed in the language that precedes it. By use of the clause the trial judge pared away and put outside of jury consideration any thought that for the purpose of this case a sickness or disease has its origin at the inception of its medical cause. The court employed an explanatory technique of placing in juxtaposition an inclusive and an exclusive statement; saying positively that a disease originates when it first becomes manifest etc., and highlighting such instruction by excluding the idea that a disease originates when its medical cause begins.

This court perceives no harm incident to the segment of the instruction under attack. On the contrary it appears to be a clarification that obviates jury confusion by removing an opportunity for conjecture about the time that a disease has its inception in a case such as this. As to rewriting the contract no lawsuit has been brought to the court's attention wherein an instruction substantially similar was given.

but this thread of clarifying language expressed in the criticized clause runs through several court opinions that are at hand, as well as a respected legal text. Old National Insurance Company v. Johnson (Ct. Civ.App.1958) 312 S.W.2d 715, no writ; American Casualty & Life Company v. Butler (Ct.Civ.App.1948), 215 S.W.2d 392, Wr.Ref., N.R.E.; American Casualty & Life Company v. Gueringer, supra; Reserve Life Insurance Company v. Lyle (Okl.1955), 288 P.2d 717, 53 A.L.R.2d 682; see also 45 C.J.S. Insurance § 893, p. 972. The use of substantially similar language indicates these authorities tacitly agree that the language condemned by appellant in this instance is useful in making a precise statement of the agreement between the parties to the insurance contract. The second sentence of the quoted instruction had much the same purpose as the first and conveys substantially the same intelligence. No objection was directed to the second sentence in the trial court, nor is complaint urged against it now. Appellant's first point of error is overruled.

Appellant's next two points of error, one directed to the great weight and preponderance of the evidence, and the other to jury misconduct, have been considered in context with the entire record. An adequate recital of all the facts and circumstances would inflate this opinion beyond worthwhile proportions and will be dispensed with as the record does not reflect reversible error in either respect.

■ The fourth is a no evidence point of error. It is argued that there is no evidence that George H. Carver is entitled to the benefits payable under the policy because he assigned such benefits to St. Michael's Hospital. George H. Carver filed his claim with the insurance company on a form labeled Texas Standard Hospital Insurance Form; (Rev. Sept. 1960); the following appears at the bottom of the claim form, to-wit:

"Assignment of Benefits

"I hereby authorize the East Texas Life and Accident Ins. Company to pay directly to St. Michael's Hospital all benefits due me, if any, by reason of services described in the statements rendered, and as provided·for in the above policy contract with aforementioned insurance company. I will pay, at _____ Texas for all such charges incurred or for all charges in excess of whatever sums may be paid by the insurance company above mentioned.

"I direct that Medical and/or Surgical benefits (if any) be paid to

| | |
|---|---|
| Dr. R. R. Brunazzi | Geo. H. Carver |
| Physician | Signature of Insured |
| L. Meyer | |
| Witness" | |

The appellant underpins its position with the following statement of the law from 1 Tex.Civ.Practice (1965 Rev.Vol.) 226 § 3.03.2 to-wit:

"If the Plaintiff fails to show a personal interest, or an interest in another for whom he is authorized to sue or who is authorized to sue in his name, the action will be dismissed. The interest must be presently vital; it is not enough that he may have had an interest in the past if it has terminated before the institution of the suit. An assignor who has parted with all legal and equitable title to a chose in action may not sue thereon,

nor may suit be brought thereon in his name unless it is so brought by or at the behest of the assignee."

The application in a proper case of the legal principles expressed by the quotation may be conceded, but examination of the purported assignment of benefits discloses that the instrument is not an assignment. It does not express an intent to make a grant to or vest in St. Michael's Hospital George H. Carver's right, title or interest in the benefits payable under the policy. It merely authorizes the insurance company to pay such benefits directly to St. Michaels. The instrument appoints St. Michael's as Carver's agent to receive benefits due him. By definition an assignment is the act by which one person causes to vest in another his right or property, or an interest therein. Harlowe v. Hudgins, 84 Tex. 107, 19 S.W. 364; Assignments, 6 Tex.Jur.2d 401 § 1. Point four is overruled.

The judgment of the trial court is affirmed.