BENEFIT LIFE INSURANCE
CO., Appellant,

v.

Bobby MIZELL, Appellee.

No. 12–97–00447–CV.

Court of Appeals of Texas,
Tyler.

June 30, 1999.

Angela Eads Tekell, Waco, for appellant.

Rex A. Nichols, Longview, for appellee.

Panel consisted of RAMEY, Jr., C.J., HADDEN, J., and WORTHEN, J.

## OPINION ON MOTION FOR REHEARING

TOM B. RAMEY, Jr., Chief Justice.

We grant Benefit Life's Motion for Rehearing and substitute the following in place of the original opinion dated March 31, 1999:

This appeal presents the insurance coverage question of whether Bobby Mizell's ("Mizell") illness was manifest more than 30 days after the effective date of the major medical policy issued to him by Benefit Life Insurance Company ("Benefit Life"). No claim is urged that the illness pre-existed the effective date of the policy. After a jury verdict favorable to Mizell, the trial court rendered judgment in his favor. Because the evidence was sufficient to support the jury finding, we will affirm the trial court's judgment.

The relevant provision in the Insuring Clause of the insurance policy states:

"The Company [Benefit Life Insurance Company] will pay for those specified expenses resulting in the Hospital Confinement and for other specified expenses . . .

    B.    Resulting from a Covered Sickness, which first manifests itself more than thirty (30) days after the Effective Date of this Policy and while this Policy is in force; . . . ."

The 30 day inception delay provision is expressed as an exception to coverage in another section of the policy, "Part 25 Waiting Period Limitations":

"1. Expenses Incurred for a Covered Sickness which first manifests itself within thirty (30) days from the Effective Date of coverage will not be covered."

When Benefit Life denied liability and refused to pay Mizell's medical expenses, Mizell sued the company for breach of contract, violations of the DTPA and the Texas Insurance Code including causes of action for bad faith and wrongful denial of payment under § 21.55 of the Texas Insurance Code. The extra-contractual claims were severed from the breach of contract cause of action by the trial court; this appeal relates to the contract claim only. This is the second appeal of this case. Earlier, this Court, in an unpublished opinion, reversed and remanded a partial summary judgment rendered in the trial court in favor of Mizell.

Benefit Life's first issue asserts that there is no evidence to support the jury's finding to Question # 1 that Mizell's subsequent diagnosis of cancer was a covered sickness under the terms of the policy. The second issue challenges the same finding on the ground that the evidence was factually insufficient to support that jury finding. Since Benefit Life did not have the burden of proof on this issue at trial, the familiar statement of the standard of review for no evidence issues is that the reviewing court considers only the evidence and inferences that tend to support the finding and disregards evidence and inferences to the contrary. *Minnesota Mining & Mfg. Co. v. Nishika, Ltd.*, 953 S.W.2d 733, 738 (Tex.1997). In 1997, however, the supreme court restated the standard holding that the reviewing court must consider all of the evidence in a light most favorable to the party in whose favor the verdict was rendered in specified instructions, and every reasonable inference deducible from the evidence is to be indulged in that party's favor. *Associated Indem.*

*Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex.1997). Under either statement of the standard, if there is any evidence of probative force to support the finding, the no evidence issue must be overruled and the jury finding upheld. *See ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex.1997). If there is more than a scintilla of evidence to support the finding, the no evidence assignment fails. *See Formosa Plastics Corp. USA v. Presidio Eng'rs.*, 960 S.W.2d 41, 48 (Tex. 1997).

In reviewing the factual sufficiency of the evidence issue, we must first consider, weigh, and examine all of the evidence which supports and which is contrary to the jury's findings. *See Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We should then set aside the verdict only if the evidence in support of the jury finding is so weak as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam).

The effective date of the subject policy was April 10, 1993. Thirty-one days later, on May 11, Mizell was examined by Dr. Jerry Collins at Taylor Medical Center with complaints of a knot about the size of a small marble in the muscle of his right arm. Mizell reported that he first noted the swollen condition on May 8, 1993. Dr. Collins's records stated that the onset of the swelling in Mizell's arm was two weeks before his examination of Mizell. Dr. Collins diagnosed the small knot as a ruptured biceps tendon and then referred Mizell to an orthopedic surgeon, Dr. Charles R. Williams ("Dr.Williams"). Dr. Williams, who examined Mizell the next day, also diagnosed Mizell's condition to be a ruptured biceps tendon which Mizell was instructed to continue to observe. A ruptured biceps tendon is a condition that is painless, nondisabling and temporary, requiring no treatment.[1]

---

1. Benefit Life's claim supervisor that handled the case originally agreed that Mizell's ruptured biceps tendon, the original diagnosis, was a covered illness for which benefits were payable.

Mizell testified to no notable growth or treatment of the swollen condition for more than two months after the two initial examinations. Mizell was then seen by Dr. Edward C. Liu and Dr. Anthony Morgan on July 21 when Mizell accompanied his daughter for her examination by Dr. Liu. Dr. Morgan's medical records state that Mizell told him that he "feels" that the mass had appeared overnight although he also stated that it may have been gradually growing. Dr. Liu ordered an MRI, and after reviewing the results, he referred Mizell to oncologists, Dr. Gary Maale and Dr. Mayme Ritchie.

Dr. Ritchie then scheduled Mizell for surgery to obtain a biopsy of the swollen area on July 29. The excised biopsy tissue revealed that Mizell had a Grade IV malignant fibrous histiocytoma (sarcoma). Benefit Life's medical expert, Dr. McDonald, testified that an MRI and biopsy, had they been performed during the 30 day period, would have disclosed the existence of the cancer in Mizell's body. Mizell subsequently underwent additional surgery, chemotherapy and radiation therapy for the malignancy in his right arm but no further cancer activity has been observed since the summer of 1993.

Mizell's claims for medical expenses for this condition were denied by Benefit Life because of the contractual provisions excluding coverage for an illness that manifests itself within thirty days of the effective date of the policy. This suit ensued. After a partial summary judgment in Mizell's favor was reversed and remanded by this Court, the case was tried to a jury in September 1997. The jury found in answer to Question # 1 that Mizell's sickness was covered by the policy. Under the definition contained in the charge, the jury found that the sarcoma did not manifest itself within thirty days of the effective date of the policy. The trial court judgment awarded Mizell contract damages in the sum of $108,652.62, plus prejudgment interest, attorneys' fees and post judgment interest. This appeal was then timely perfected.

Both parties agree that the law expressed in *East Texas Life & Accident Insurance Co. v. Carver*, 407 S.W.2d 251, 252 (Tex.Civ.App.—Texarkana 1966, writ dism'd) is applicable here. According to *Carver*, the illness will ordinarily have its inception for policy purposes *"when it first becomes manifest or active or when there is a distinct symptom or condition from which one learned in medicine can, with reasonable accuracy, diagnose the disease."* Id, at 252; *see also Hannum v. General Life and Acc. Ins. Co.*, 745 S.W.2d 500, 501 (Tex.App.—Corpus Christi 1988, no writ). The condition does not necessarily commence when its medical cause began or had its origin but when it becomes manifest or active. *First Bankers Insurance Company v. Newell*, 463 S.W.2d 745, 747 (Tex.App.—Amarillo, 1971, *aff'd* 471 S.W.2d 795); *Carver*, 407 S.W.2d at 252. The absence of a diagnosis of cancer by a physician within the 30 day delay period does not automatically impose liability upon the insurer. *Hannum*, 745 S.W.2d at 501, 502.

The critical issue in this case is the determination under the subject policy of whether Mizell's illness could be diagnosed within the 30 day waiting period after the effective date of the policy. The controlling *Carver* circumstances we consider in determining whether Mizell's illness could have been diagnosed within 30 days of the effective date of the policy are:

1) the condition was *manifest* within 30 days of the effective date of the policy;

2) the condition was *active* within 30 days of the effective date of the policy;

3) there was a distinct *symptom* from which one learned in medicine *could* diagnose the sickness within 30 days of the effective date of the policy; and

4) there was a distinct *condition* from which one learned in medicine *could* diagnose the sickness within 30 days of the effective date of the policy. (Emphasis added).

*Hannum*, 745 S.W.2d at 501; *Carver*, 407 S.W.2d at 252.

Thus, first, we must consider whether the cancer was "manifest" during the inception delay period. "Manifest" was selected as the operative verb in both the insuring clause and the waiting period limitations provisions of the subject policy. It is likewise the initial verb in the *Carver* test created to ascertain the inception delay date of this type of policy. *Id.* The drafters of the policy unmistakably decided that the condition (here, the cancer) must be "manifest" within 30 days of the effective date of the policy in order to preclude coverage. We conclude that the policy emphasis upon "manifest" requires us to assign it special significance in the determination of the inception delay date of the illness.

■■■ "Manifest" is defined as "readily perceived by the senses and especially by the sight." *Merriam Webster Collegiate Dictionary*, 707 (10th ed.1997). Justice Gonzalez in his dissent in a December 31, 1998 opinion made an extensive review of cases from various jurisdictions that considered the meaning of "manifest" in this context. *Provident American Insurance Company v. Castaneda*, 988 S.W.2d 189 (1998). The study showed that the common meaning of "manifest" is that a disease is manifest when it is "apparent, obvious, or plain." We conclude that the verb "manifest" in the policy requires that the information available for diagnosis must be restricted to what the physician could "readily perceive by the senses especially by sight" and similarly what is "apparent, obvious, or plain" to the doctor. We hold that the results of invasive surgery of a patient are not "apparent, obvious, or plain". The cancer was not manifest within 30 days of the effective date of the subject policy.

■■■ Second, we consider whether the evidence was sufficient that the sarcoma became *active* within 30 days of the effective date of the policy. It may be argued that the swollen condition was active during the 30 day period because Mizell first became aware of its existence during the 30 day period. On the other hand, the condition appeared to be quiescent; the evidence did not show during that period that it caused any pain, nor that it was disabling, nor that it necessitated treatment or medication and there is no evidence that it grew in size or changed in appearance during the waiting period after first being noticed. Indeed, including the testimony of Benefit Life's claim supervisor, the company offered no evidence that the condition was not covered. The only medical testimony pertaining to the active nature of the condition during this period was that Drs. Richie and Liu stated that this type of sarcoma does not demonstrate its symptoms of malignancy until a later stage in its development. We conclude that there was sufficient evidence to support the jury's finding that Mizell's condition was not *active* within 30 days of the effective date of the policy. Even if there be evidence inferring that the condition was active during the 30 day period, the facts are disputed by evidence to the contrary, and we are bound by the jury's finding.

The third and fourth elements question whether there were distinct *symptoms* or *conditions* from which a learned physician *could* diagnose the cancer within 30 days of the effective date of the policy. It is not disputed that one learned in medicine *could* have diagnosed Mizell's cancer had the results of the MRI and the biopsy been presented to that physician. Here, the terminology of the *Carver* decision specifically confines the doctor's diagnosis to the patient's "distinct symptoms or conditions." The *Carver* language requires that these *symptoms and conditions* be the source *"from which"* the diagnosis is

made. We cannot escape the conclusion that the *Carver* diagnosis must be solely predicated upon distinct symptoms and conditions which Mizell, himself, presented during the 30 day period and not upon testing procedures performed apart from Mizell's original symptoms or condition. The evidence reflects that the diagnosis of cancer could not have been made based upon what a physician saw, felt or learned from his examination of the patient, but could only be determined from the additional results of invasive surgery upon Mizell's body.

We hold that Mizell's condition was covered because it had not manifested within the 30 day exclusionary period. We disagree that there was no evidence or insufficient evidence that consideration of any of the four circumstances recited in the *Carver* and *Hannum* opinions require a holding that Mizell's cancer could have been diagnosed within 30 days of the effective date of the policy. We conclude that there was sufficient evidence to support the jury's finding to Question # 1. The jury's finding that the disease had not manifested should be sustained. Benefit Life's first and second issues are overruled.

◼ Benefit Life's third issue asserts that the trial court erred in admitting direct testimony by medical experts based on an improper legal standard which was reasonably calculated to and probably did cause an improper judgment in the case. The alleged objectionable testimony occurred during the testimony of Drs. Richie and Liu. Several testimonial answers of the doctors are challenged. They fall into two categories: first, that the attending doctors' diagnosis that Mizell had sustained a ruptured biceps tendon was a reasonable diagnosis, and second, under the circumstances, that it was a reasonable medical practice for the attending doctors not to order an MRI or biopsy for Mizell during the 30 day waiting period. The company alleges that this testimony injected an improper subjective legal standard

rather than the *Carver* test. No legal authority was cited to support Benefit Life's contention here.

Initially, we are not persuaded that the admission of the complained-of medical testimony constituted error by the trial court. We have found no authority to support the insurer's contention. Furthermore, reviewing courts generally leave to the lower court's discretion questions of relevancy, and the weighing of the probativeness of evidence versus its prejudicial nature. *Miles v. Ford Motor Co.*, 922 S.W.2d 572, 594 (Tex.App.—Texarkana 1996) *rev'd on other grounds,* 967 S.W.2d 377 (Tex.1998).

Furthermore, it is not disputed that the jury was properly instructed in the court's charge on the correct standard as to whether Mizell's cancer was a covered sickness; the jury was charged to adhere to the *Carver* rule. We must assume the jury followed the trial court's instructions as directed in its charge. *First Heights Bank, FSB v. Gutierrez,* 852 S.W.2d 596, 615 (Tex.App.—Corpus Christi 1993, writ denied). For the reasons stated, we overrule Benefit Life's third issue.

◼ In its amended brief, Mizell urges a motion for sanctions against Benefit Life because the company did not pursue this appeal in good faith and filed it solely for purposes of delay. He argues that Benefit Life contended that a fact issue was raised on the lack of coverage when undertaking to reverse the earlier partial summary judgment but now insists there was no coverage; also he argues that a Benefit Life claims examiner felt that the claim should have been honored as early as November 1993. We disagree with the motion for sanctions. As stated, the pertinent policy provisions do not specifically answer the critical question and there is no legal authority instructing the extent of the information that the medical expert may use in formulating his diagnosis. Mizell's motion for sanctions is denied.

The judgment of the trial court is affirmed.