

# IN THE
# TENTH COURT OF APPEALS

## No. 10-08-00002-CR

**ISMAEL DELEON LUNA,**

                                           **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                           **Appellee**

---

**From the 249th District Court**
**Johnson County, Texas**
**Trial Court No. F41918**

---

# OPINION

Appellant Ismael DeLeon Luna appeals his conviction for two counts of felony delivery of a controlled substance (greater than one gram but less than four grams) in a drug free zone and one count of felony possession of a controlled substance (over 400 grams) in a drug free zone. A jury assessed ten-year and twenty-year prison sentences, respectively, for the first two counts and a thirty-year prison sentence and $15,000 fine for the third count. We will affirm.

In his first issue, Luna contends that the trial court erred by denying his motion to suppress and admitting his videotaped statement into evidence. Luna argues that the statement was obtained when police continued to question him after he had asserted his Fifth Amendment right to remain silent.

The right to terminate questioning is among the procedural safeguards that *Miranda* establishes. *Miranda v. Arizona*, 384 U.S. 436, 473-74, 86 S.Ct. 1602, 1627-28, 16 L.Ed.2d 694 (1966). This right, which safeguards the Fifth Amendment right to remain silent, requires the police to immediately cease custodial interrogation when a suspect "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent." *Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008) (quoting *Miranda*, 384 U.S. at 473-74, 86 S.Ct. at 1627). The suspect does not need to use any particular word or phrase to invoke the right to remain silent. *Watson v. State*, 762 S.W.2d 591, 597 (Tex. Crim. App. 1988). Any declaration of a desire to terminate the contact or inquiry should suffice. *Ramos*, 245 S.W.3d at 418. The suspect need not object to further questioning in order to protect the right to remain silent. *Watson*, 762 S.W.2d at 599.

The threshold question is whether the suspect invoked his right to silence. *Ramirez v. State*, 44 S.W.3d 107, 110 (Tex. App.—Austin 2001, no pet.). An interrogating officer need not stop his questioning unless the suspect's invocation of rights is unambiguous. *Ramos*, 245 S.W.3d at 418; *Dowthitt v. State*, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996). Ambiguity exists when the suspect's statement is subject to more than one reasonable interpretation under the circumstances. *Williams v. State*, 257

S.W.3d 426, 433 (Tex. App.—Austin 2008, pet. ref'd). The officer is not required to clarify ambiguous remarks; however, an officer does not violate a suspect's right to remain silent when he attempts to clarify whether the suspect wishes to remain silent, and the suspect thereafter chooses to continue to speak about the offense. *Ramos*, 245 S.W.3d at 418; *Williams*, 257 S.W.3d at 432-33. In determining whether the right to remain silent was unambiguously invoked, courts look to the totality of the circumstances. *Watson*, 762 S.W.2d at 597.

Following Luna's arrest, Officer Mark Goetz of the Cleburne Police Department met with him. Luna indicated that he was having trouble understanding Goetz, so Goetz asked Maria Herrada, who is fluent in both Spanish and English, to translate. The transcript of a portion of the conversation follows:

> MR. GOETZ: Tell him that he is, in fact, under arrest and before that we have to read him his rights.
>
> (Herrada interpreting)
>
> MR. GOETZ: Would you be kind enough to read those to him and ask him if he understands each of those rights.
>
> (Herrada-Luna converse in Spanish)
>
> MS. HERRADA: Okay. He's talking about -- when I said if he's going to, you know, stay, if he's going to be silent or if he's going to speak to you in the last one, and he said, Talk about what? I said, Well, I need for you to stay yes or no. And he said, All right. And then say -- and then he wants to know what do you want to talk to him about.
>
> MR. GOETZ: I want to talk to him about drugs. I want to talk to you about the drugs that were over at your house and what's going on over there.
>
> MR. LUNA: I just -- (unintelligible)

MR. GOETZ: Let me make sure we're all on the same page here. Do you understand the rights she said to you?

MR. LUNA: Yeah.

MR. GOETZ: All right. Are you willing to talk to me about what's going on over there at your house?

(Herrada interpreting)

Both parties agree that Luna shook his head from side to side and replied, "No puedo," which both parties agree is properly translated as "I can't." Goetz then stated, "Tell him we're not asking him about who he's getting his dope from right now. I want to know what's going on at his house." The interpreter translated that for Luna, who then made several incriminating statements.

Luna argues that when he said, "No peudo" (*i.e.*, "I can't"), he unambiguously invoked his right to remain silent, but we agree with the State's contention that Luna's response was ambiguous.

Goetz interpreted Luna's response not as an unambiguous invocation of his right to remain silent but only as an inability to discuss the source of the drugs found at the house. This is a plausible interpretation of the statement under the circumstances. When Herrada first read Luna his *Miranda* rights, Luna expressed a willingness to talk to Goetz and asked what Goetz wanted to talk to him about. When Goetz then asked Luna if he was willing to talk to him about what was going on at his house, Luna did not say, "No." Instead, he responded, "No peudo" (*i.e.*, "I can't"). A plain interpretation of this response indicates that Luna was not necessarily expressing a

desire to remain silent but rather an inability to talk to Goetz for some reason. The response was thus ambiguous, and Goetz's continued questioning was not violative of Luna's right to remain silent. *See, e.g.*, *United States v. Sanchez*, 866 F. Supp. 1542, 1559 (D. Kan. 1994) (holding statement "I can't say nothing" was ambiguous and thus not violative of defendant's right to remain silent); *People v. Montano*, 226 Cal. App. 3d 914, 931, 277 Cal. Rptr. 327, 334 (1991) (stating defendant's response "I can't" when asked "Can you tell us what happened?" did not amount to an invocation of his right to remain silent). We overrule Luna's first issue.

In his second issue, Luna contends that the trial court erred during the punishment phase of the trial in admitting evidence about certain extraneous bad acts because the State failed to provide proper notice under article 37.07, section 3(g) of the Code of Criminal Procedure. The State responds that Luna failed to preserve this issue for appellate review; the State substantially complied with the notice provision of article 37.07, section 3(g); and even if the trial court erred in admitting the testimony, the error was harmless. Assuming without deciding that this issue is preserved for appellate review and that the trial court erred in admitting the testimony, we agree with the State that the error was harmless.

Error in admitting evidence with insufficient notice under article 37.07, section 3(g) is nonconstitutional error. *Apolinar v. State*, 106 S.W.3d 407, 414 (Tex. App.—Houston [1st Dist.] 2003), *aff'd on other grounds*, 155 S.W.3d 184 (Tex. Crim. App. 2005); *Roethel v. State*, 80 S.W.3d 276, 281 (Tex. App.—Austin 2002, no pet.). A nonconstitutional harm analysis for statutory violations is performed under Texas Rule

of Appellate Procedure 44.2(b). *See* TEX. R. APP. P. 44.2(b); *Gray v. State*, 159 S.W.3d 95, 97-98 (Tex. Crim. App. 2005). To assess nonconstitutional errors, we examine whether the purpose of the statute or rule violated was thwarted by the error. *Roethel*, 80 S.W.3d at 281 (citing *Ford v. State*, 73 S.W.3d 923, 925-26 (Tex. Crim. App. 2002)). The purpose of article 37.07, section 3(g) is to avoid unfair surprise and to enable a defendant to prepare to answer the extraneous offense evidence. *Apolinar*, 106 S.W.3d at 414-15; *Roethel*, 80 S.W.3d at 282; *Nance v. State*, 946 S.W.2d 490, 493 (Tex. App.—Fort Worth 1997, pet. ref'd). This analysis requires examining the record to determine whether the deficient notice resulted from prosecutorial bad faith or prevented the defendant from preparing for trial. *Roethel*, 80 S.W.3d at 282. In determining the latter, appellate courts look at whether the defendant was surprised by the substance of the testimony and whether that affected his ability to prepare cross-examination or mitigating evidence. *Id.*

Luna does not argue that the admission of the complained-of evidence was the result of prosecutorial bad faith, nor does he argue unfair surprise. The record reflects that at least two weeks prior to trial, the State amended its notice of intent to introduce evidence of extraneous matters to include the following: "On or about multiple times and on multiple dates in Johnson County, Texas beginning when the defendant Ismael Luna's son was approximately two years old, the defendant Ismael Luna sold illegal drugs." This same paragraph also appeared in the State's second, third, and fourth amended notices. During the punishment phase of the trial, Luna's former wife testified that Luna sold cocaine for about a six-month period beginning in 1997 when

her son was two years old, and, thereafter, he stopped selling drugs until the beginning of 2005.  We conclude that Luna did not suffer harm because he claims no surprise as to the testimony and he does not claim his ability to prepare cross-examination or mitigating evidence was affected.  *See Roethel*, 80 S.W.3d at 282.  We overrule Luna's second issue.

Having overruled both of Luna's issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
Affirmed
Opinion delivered and filed August 26, 2009
Publish
[CRPM]