

NUMBER 13-16-00388-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

SCOTT PAUL MADLOCK,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

On appeal from the 207th District Court
of Comal County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Contreras and Benavides
Memorandum Opinion by Justice Contreras**

Appellant Scott Paul Madlock appeals his conviction for four counts of aggravated

sexual assault of a child younger than six years of age, a first degree felony, and one

count of indecency with a child, a second degree felony. *See* TEX. PENAL CODE ANN. §§

21.11, 22.021 (West, 2017 Westlaw through 1st C.S.). By one issue, appellant contends the trial court erred when it overruled his objection and admitted into evidence incriminating statements he had made to investigators. We affirm.

## I. BACKGROUND[1]

Appellant was being held in a Bexar County Jail on a probation violation when his three children were taken into custody by the Department of Family and Protective Services (DFPS). The children had been living with appellant's wife, but they were taken by DFPS due to unsanitary home conditions. While they were living in a shelter, two of the children acted out in a sexual manner. As a result, all three children were taken for a forensic interview at a Child Advocacy Center, and all three children stated that appellant had sexual contact with them.

On December 5, 2014, Detective Danny Dufur questioned appellant at the Bexar County Jail about the children's statements and recorded the interview. Detective Dufur read appellant his *Miranda*[2] warnings, and appellant acknowledged that he understood his rights and voluntarily waived them. After speaking for around forty-five minutes, appellant made the following statement:

> I guess I do have issues, I ain't going to lie. And you're right, they do progress and become even worse and worse and worse. As far as the details, I would like to have an attorney present please just for the sake of my wife because I don't want to put her or say something stupid that would put her in a position of being considered endangerment. She was never even around anyway so that's why I said she has nothing to do with this.

---

[1] This case is before this Court on transfer from the Third Court of Appeals in Austin pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2017 1st C.S.).

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

Detective Dufur sought clarification from appellant on whether he wanted to end the interview, and appellant responded that he would continue to talk. Appellant then made incriminating statements admitting to having sexual contact with his children. He was subsequently indicted and brought to trial.

At trial, the State sought to introduce the audio recording of the interview, and appellant objected to its admission. A hearing was held outside the presence of the jury, and the following exchange took place between the trial court and appellant's trial counsel in regard to the objection:

| | |
|---|---|
| [The Court]: | Well, don't you agree that the law – it has to be an unequivocal invocation of his right to counsel? |
| [Trial counsel]: | And, of course, it's our position that it is. He said he wanted a lawyer before he went out and – |
| [The Court]: | Said he would like – |
| [Trial counsel]: | – it had to do with his wife |
| [The Court]: | I thought he said, for the sake of my wife, I would like to have an attorney present. |
| [Trial counsel]: | Right. I think that's unequivocal. I don't think he has to state his reasons, even, for having a lawyer. |
| | . . . |
| [The Court]: | All right. Well, in that case, just using plain rules of grammar and English and syntax, he qualified his request for an attorney for the sake of his wife, not for the sake of him – for his prosecution. And that's certainly not an unequivocal request for an attorney to protect his rights. |

The trial court overruled appellant's objection and admitted the incriminating statements into evidence. Appellant's trial counsel then placed his objection on the record and stated:

3

In regard to the legal issue . . . the defendant objects to the introduction of all incriminating statements concerning this case for the reason that the defendant requested a lawyer pursuant to Article 38.22 and to his rights pursuant to Miranda, the 6th and 5th Amendment to the United States Constitution, and the corresponding amendments to the Texas Constitution. And we object to the Court's introduction, thereof, for reason that those rights were violated as well as his rights to due process of law and due course of law both with regard to the United States Constitution and the Texas Constitution.

The jury convicted appellant on all charges, and the trial court sentenced him to life without parole for each count.[3]  *See* TEX. PENAL CODE ANN. §§ 12.42, 21.11, 22.021 (West, Westlaw through 2017 1st C.S.).  This appeal followed.

## II.  DISCUSSION

By one issue, which we construe as two sub-issues, appellant argues that the trial court erred when it overruled his objection and admitted into evidence his incriminating statements to Detective Dufur because:  (1) he invoked his right to an attorney; and (2) his statements were involuntary and the result of police coercion.

### A.  Standard of Review & Applicable Law

An individual subject to custodial interrogation has a Fifth Amendment right to consult with an attorney and to have counsel present during questioning.  *Miranda v. Arizona*, 384 U.S. 436, 469–73 (1966); *see* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2 (West, Westlaw through 2017 1st C.S.).  The invocation of this right must be clear and unambiguous, and the mere mention of the word "attorney" or "lawyer" without more does not automatically invoke it.  *Dinkins v. State*, 894 S.W.2d 330, 351 (Tex. Crim. App. 1995) (en banc).  If a suspect clearly and unequivocally asserts his right to have counsel

---

[3] Appellant's punishment was enhanced to an automatic life sentence due to his previous conviction for the felony offense of indecency with a child.  *See* TEX. PENAL CODE ANN. § 12.42(c)(2) (West, Westlaw through 2017 1st C.S.).

4

present, then law enforcement officers must immediately stop questioning him. *Edwards v. Arizona*, 451 U.S. 477, 485 (1981); *Dinkins*, 894 S.W.2d at 350–51. But, "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking his right to counsel, [it does] not require the cessation of questioning." *Davis v. U.S.*, 512 U.S. 452, 455 (1994) (emphasis in original).

When reviewing alleged invocations of the right to counsel, we typically look at the totality of the circumstances surrounding the interrogation, as well as the contents of the alleged invocation, in order to determine whether a suspect's statement can be construed as an actual invocation of his right to counsel. *State v. Gobert*, 275 S.W.3d 888, 892 (Tex. Crim. App. 2009); *Dinkins*, 894 S.W.2d at 351. The inquiry into whether a suspect has invoked his right to counsel is an objective one, i.e., "the suspect must articulate [a] desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Gobert*, 275 S.W.3d at 892–93 (quoting *Davis*, 512 U.S. at 458–59).

## B. Invocation of Right to Counsel

By his first sub-issue, appellant argues that his objection to the admission of his incriminating statements should have been sustained because he invoked his right to counsel.

As noted, a defendant's invocation of his right to counsel must be clear and unambiguous, and we must look at the totality of the circumstances for the purpose of our review. *Gobert*, 275 S.W.3d 892; *Dinkins*, 894 S.W.2d at 351. In other words, not every mention of a lawyer by a suspect will trigger the Fifth Amendment right to the presence

5

of counsel during questioning. *Gobert*, 275 S.W.3d at 892; *see, e.g.*, *Hartwell v. State*, 476 S.W.3d 523, 531 (Tex. App.—Corpus Christi 2015, pet. ref'd) (holding that defendant did not invoke right to counsel by asking, "should I maybe call my attorney friend and see what he thinks?"); *Mbugua v. State*, 312 S.W.3d 657, 665 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (holding that defendant did not invoke right to counsel by asking, "Can I wait until my lawyer gets here?"); *see also In re H.V.*, 252 S.W.3d 319, 325 (Tex. 2008) (noting that defendant does not invoke right to counsel by saying, "Maybe I should talk to a lawyer," "I might want to talk to a lawyer," "I think I need a lawyer," "Do you think I need an attorney here?" or "I can't afford a lawyer but is there any way I can get one?").

Here, we find relevant the following exchanges between appellant and Detective Dufur:

| [Dufur]: | When we talk about the children, we want them to grow, we want them to heal, we want them to become good citizens, basically, in society. Okay. If we stopped their progress right now, they wouldn't heal, they wouldn't grow up to be something of good. Okay. Because they are still living back in the past, and they've got the issues of their childhood. And you've heard of it before. Okay. So now is where the point where we change these children, and hopefully get them to grow to be happy, to live the life that you want them to live – |
|---|---|
| [Appellant]: | – With their mother? |
| [Dufur]: | Okay. Possibly. You know, I don't know that. Unfortunately, I don't know work for [DFPS], so I don't have any of those, those controls, over – because they do the child protective services, they do the removals, and the safety plans, and all that. I don't do that, but they do. Is this the best environment for the child? with the mom? |
| [Appellant]: | Yeah. |

. . .

6

[Dufur]: I know I'm telling ya – I know I'm talking a lot to you. And, I see, man to man I see you hurt. I see the pain in you, Scott.

[Appellant]: I don't want the kids taken from my wife.

[Dufur]: And I understand that. I do. Maybe that's something we can work on. That's something I can talk to [DFPS] about, Scott.

. . .

[Appellant]: I'm not going to blow smoke up your butt, I – whatever they say I just want to say no contest to. I put my hands up in the air. I'm not going to argue. I'm not going to take my kids to trial. I'm not going to put my wife through all that.

. . .

[Dufur]: What the children, obviously they're telling me, hey, this is not a one time incident. Was it just a one time incident?

[Appellant]: No.

[Dufur]: How long has this been going on?

[Appellant]: Months, months.

[Dufur]: Are we talking months, are we talking years?

[Appellant]: A month.

[Dufur]: What is happening? All you can do is move forward. I'm here to listen to you, Scott. I'm here to explain. I'll shut up, and I'll listen.

. . .

[Appellant]: I guess I do have issues, I ain't going to lie. And you're right, they do progress and become even worse and worse and worse. As far as the details, I would like to have an attorney present please just for the sake of my wife because I don't want to put her or say something stupid that would put her in a position of being considered endangerment. She was never even around anyway so that's why I said she has nothing to do with this.

7

| | |
|---|---|
| [Dufur]: | Let me – let me cut you off real quick, okay. Let me explain to you. You said you want an attorney present. That's your right. You have that right. And I want to make sure that you're clear, that if you want an attorney present, I can't talk to you anymore, okay. I feel that you explaining your side of the story has nothing to do with hurting or helping your wife, okay. I don't think it will hurt your wife, I don't know – because like you said, she didn't have anything to do with it and I've talked to her, okay. And I've told, you know, I don't have control over the children but I do work closely with [DFPS] and I'm able to communicate with them, alright. But in order to talk to you anymore, you know once you bring up the attorney thing, I can't. I can't hear what you have to say unless you want me to, okay. But with that said, do you want to talk to me anymore, right now or do you want . . . . |
| [Appellant]: | I just don't know what else to say |
| [Dufur]: | The biggest thing is – is to let the children know that they're not on their own, okay – that things are true and that – man what do you, what do, what do you tell them. They just want to know. |
| [Appellant]: | But to hear the words of what they said coming out of my mouth makes me want to vomit. |
| [Dufur]: | I understand that. |
| [Appellant]: | I don't wish to speak, I don't want to go down that road again. I don't want to go there anymore. I mean there is a reason I am not supposed to be around them. I'll admit, I'm not going to lie. |
| [Dufur]: | You're a good person Scott. |
| [Appellant]: | No I'm not. |
| [Dufur]: | You just have – problems man. |
| [Appellant]: | Look at what I did to my own kids. |
| [Dufur]: | I know. But they're going to be okay. I know they are. I seen it. I seen that they're going to be okay. They're young, too. So that's, that's a good thing. |
| [Appellant]: | Oh, God. |

| [Dufur]: | Do you want to talk to me anymore, at all? |
|---|---|
| [Appellant]: | Fine. I'll talk. I'll talk. I'll talk. |
| [Dufur]: | Is that okay with you? |
| [Appellant]: | That's fine. |

Appellant argues that he invoked his right to counsel when he said: "I would like to have an attorney present please just for the sake of my wife because I don't want to put her or say something stupid that would put her in a position of being considered endangerment." The State argues that by stating that the reason he wanted an attorney was "for the sake of my wife", appellant's request became ambiguous as to whether he was trying to get a lawyer for his wife or for his own purposes. We agree with the State.

The ambiguity in appellant's statement is especially evident after reviewing the totality of the circumstances, *see Gobert*, 275 S.W.3d at 892, from which we note the following: (1) appellant was read his *Miranda* warnings and voluntarily waived his right to an attorney, (2) DFPS had originally taken the children from appellant's wife's care, (3) the interviewing officer and appellant were aware of this fact, (4) statements made by appellant during the interview could expose his wife to criminal or civil consequences, *see* TEX. FAM. CODE ANN. § 161.001 (West, Westlaw through 2017 1st C.S.) (actions resulting in involuntary termination of parent-child relationship); TEX. PENAL CODE ANN. § 22.041 (West, Westlaw through 2017 1st C.S.) (actions constituting abandoning or endangering a child), and (5) during the portion of the interview that preceded the alleged invocation, appellant repeatedly expressed concern for his wife and any prejudice this might bring to her, while not denying the children's statements or his guilt. These factors accentuate the qualifying phrase "for the sake of my wife" and make appellant's statement ambiguous as to his request for an attorney. *See Luna v. State*, 301 S.W.3d 322, 325 (Tex. App.—

9

Waco 2009, no pet.) ("Ambiguity exists when the suspect's statement is subject to more than one reasonable interpretation under the circumstances."); *see also Davis*, 512 U.S. at 460–61 ("A suspect who knowingly and voluntarily waives his right to counsel after having that right explained to him has indicated his willingness to deal with the police unassisted.").

Furthermore, after appellant's alleged invocation, Detective Dufur attempted to clear up the ambiguity—something which he was not prohibited from doing. *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010) (quoting *Davis*, 512 U.S. at 455) ("If an ambiguous act, omission, or statement could require police to end the interrogation, police would be required to make difficult decisions about an accused's unclear intent and face the consequence of suppression 'if they guess wrong.'"); *see also Davis*, 512 U.S. at 462 ("Clarifying questions help protect the rights of the suspect by ensuring that he gets an attorney if he wants one, and will minimize the chance of a confession being suppressed due to the subsequent judicial second-guessing as to the meaning of the suspect's statement regarding counsel."). Appellant responded by stating that he wanted to continue the interview.

Therefore, after reviewing the totality of the circumstances from the objective standpoint of a reasonable officer in Detective Dufur's position, we conclude that appellant did not make a clear and unambiguous invocation of the right to counsel. *See Dinkins*, 894 S.W.2d at 351.

We overrule appellant's first sub-issue.

### C. Voluntariness and Police Coercion

10

By his second sub-issue, appellant argues that the trial court erred in overruling his objection to the introduction of his incriminating statements because they were involuntary and the result of police coercion.

In order for an issue to be preserved on appeal, there must be a timely objection that specifically states the legal basis for the objection. TEX. R. APP. P. 33.1(a); *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990); *Armstrong v. State,* 718 S.W.2d 686, 689 (Tex. Crim. App. 1985). A general or imprecise objection will not preserve error for appeal unless "the legal basis for the objection is *obvious* to the court and to the opposing counsel." *Vasquez v. State*, 483 S.W.3d 550, 554 (Tex. Crim. App. 2016) (quoting *Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006) (emphasis in original)). In addition, when a complaint on appeal differs from that made at trial, the error is waived. *Cook v. State*, 858 S.W.2d 467, 474 (Tex. Crim. App. 1993) (citing *Rezac*, 782 S.W.2d at 870) ("An objection stating one legal basis may not be used to support a different legal theory on appeal.").

Here, appellant objected to the admission of the interrogation on the basis that he had requested an attorney and was not provided with one. As a result, the State's response and the trial court's decision had to do with whether appellant had invoked his right to counsel or whether he had asked for counsel for his wife. After the court ruled on the objection and found that appellant had requested an attorney for his wife, trial counsel placed his objection on the record as set forth above.

Appellant's argument that his incriminating statements should have been suppressed because they were involuntary as a result of police coercion is legally distinct from the argument that they should have been suppressed because he invoked his right

11

to counsel. *See* TEX. CODE CRIM. PROC. ANN. arts. 38.21, 38.22 (West, Westlaw through 2017 1st C.S.); *see also Henderson v. State*, 962 S.W.2d 544, 564 (Tex. Crim. App. 1997) (en banc); *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997). And, appellant's trial counsel's objection did not refer to voluntariness or coercion in any way so as to indicate that appellant was objecting on that legal basis in addition to his claim of invocation of counsel. *See Resendez*, 306 S.W.3d at 315; *Buchanan*, 207 S.W.3d at 777. Thus, after reviewing the record, we cannot conclude that appellant objected to the introduction of his statements on the basis of coercion or involuntariness. *See Vasquez*, 483 S.W.3d at 554. Therefore, we find that appellant's complaint is waived. *See* TEX. R. APP. P. 33.1(a); *Vasquez*, 483 S.W.3d at 554; *Resendez*, 306 S.W.3d at 312.

We overrule appellant's second sub-issue.

### III.    CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
11th day of January, 2018.

12