Fernando MARTINEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–01–00135–CR.

Court of Appeals of Texas, San Antonio.

June 28, 2002.

Richard E. Langlois, Law Offices of Richard E. Langlois, San Antonio, for appellant.

Susan D. Reed, Criminal District Attorney, Edward F. Shaughnessy, III, Assistant Criminal District Attorney, San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, SANDEE BRYAN MARION, Justice.

Opinion by: SANDEE BRYAN MARION, Justice.

A jury found defendant, Fernando Martinez, guilty of murder and assessed punishment at twenty years' confinement. The defendant does not challenge the sufficiency of the evidence; instead, he raises two procedural complaints: the trial court committed reversible error (1) by denying his request for a jury charge on the lesser-included offense of criminally negligent homicide and (2) by denying him the opportunity to present extraneous evidence of the victim's prior violent acts.

## LESSER–INCLUDED OFFENSE INSTRUCTION

Defendant asserts he was entitled to a charge on the lesser-included offense of criminally negligent homicide because the evidence establishes that he was unaware of the risk that his gun would discharge when he struck the victim on the side of the head with the gun.

Whether a charge on a lesser-included offense is required is determined by a two-pronged test: first, we must determine whether the offense constitutes a lesser-included offense, and second, whether there was evidence that, if guilty of an offense, defendant was guilty only of the lesser-included offense. *Schweinle v. State*, 915 S.W.2d 17, 18 (Tex.Crim.App. 1996); *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex.Crim.App.1993). As long as evidence from any source raises an issue that a lesser-included offense may have been committed, and a jury charge is properly requested, the issue must be submitted to the jury. *Thomas v. State*, 699 S.W.2d 845, 849 (Tex.Crim.App.1985). The credibility of the evidence and whether it is disputed or conflicts with other evidence may not be considered in determining whether such a charge should be given. *Id.* Here, the State concedes, and we agree, that criminally negligent homicide is a lesser-included offense of murder. *See Thomas*, 699 S.W.2d at 847.

The second prong of the test can be satisfied if there is some evidence that would allow a rational jury to find that if the defendant is guilty, he is guilty only of criminally negligent homicide. *Schweinle*, 915 S.W.2d at 17; *Bergeron v. State*, 981 S.W.2d 748, 750 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd). Criminally negligent homicide is defined as causing the death of an individual by criminal negligence. TEX. PEN.CODE ANN. § 19.05 (Vernon 1994). A person acts with criminal negligence when he ought to be aware of a substantial and unjustifiable risk. *Id.* § 6.03(d). The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id.* The nature of negligence is that it is not intentional or even reckless. It is the failure to perceive a risk of which one should have been aware. Thus, the charge of criminally negligent homicide is re-

quired in a particular case if the record contains evidence showing that the defendant was unaware of the risk, or that he failed to perceive the risk created by his conduct. *Thomas,* 699 S.W.2d at 850–51; *Mendieta v. State,* 706 S.W.2d 651, 653 (Tex.Crim.App.1986).

The defendant managed an establishment called Chicano Magic. On the night of the offense, he sat at the bar, armed with a nine-millimeter gun that he always kept with him when he worked. The defendant had owned the gun for three or four years and knew how it worked. The gun is an automatic, and bullets move into the chamber either by someone putting a bullet into the chamber or by pulling back the slide, which pushes a bullet into the chamber. The gun does not have a safety.

On the night of the offense, 80 to 100 people were in the bar. At some point in the evening, the bartender told defendant about a customer in the back of the establishment. Defendant approached the customer, Mario Melchor, who was intoxicated. Defendant and Melchor stood about one foot apart, and defendant told Melchor that he would not be served anymore beer. When defendant picked up Melchor's beer from the bar and moved it to another place on the bar, Melchor got mad and hit the defendant in the face. The defendant hit back. The defendant was held from behind, while Melchor jabbed him several times, causing defendant to feel a burning sensation in the side of his stomach. The defendant thought he was being stabbed, he thought Melchor was going to kill him, and to get Melchor away from him, he pulled out his gun. Defendant hit Melchor on the side of his head with the gun, and the gun discharged, fatally wounding Melchor. The defendant testified that he wanted to hit Melchor to get Melchor away from him, but he was not trying to shoot

him. He admitted that his finger had to have been on the trigger for the gun to fire.

An allegation of accidental discharge does not necessarily raise the issue of criminally negligent homicide. *Thomas,* 699 S.W.2d at 850. The attendant circumstances from which the defendant's mental state can be inferred must be collectively examined in light of the definition of criminally negligent conduct. *Id.* Other evidence raising the issue of whether a defendant was aware of the risk must be presented before such charge is required. *Id.* "Evidence that a defendant knows a gun is loaded, that he is familiar with guns and their potential for injury, and that he points a gun at another, indicates a person who is aware of a risk created by that conduct and disregards the risk." *Id.* In *Thomas,* there was evidence that the defendant knew the gun was loaded, that he was familiar with guns and the potential for injury, and that he pointed a gun toward someone else. *Id.* at 851–52. The Court of Criminal Appeals stated that the mere fact that the defendant testified someone bumped him, causing him to pull the trigger, does not necessarily alter the awareness of risk. *Id.* at 850. Just because part of the conduct may be involuntary does not relieve a defendant of responsibility and culpability for the entire action. *Id.* It may be the case that a defendant has awareness of the risk and disregards it. *Id.* Emphasis should not be placed on the gun's accidental discharge, although that is a circumstance that should be considered. *Id.* at 851. All circumstances showing the defendant's mental state and awareness of risk of harm or death, given the circumstances, must be reviewed. *Id.*

Here, the defendant was familiar with a gun he had owned for several years, he knew it was loaded, and he knew his finger

was on the trigger. In viewing the evidence in the light most favorable to defendant's theory, there is only a suggestion that he might have disregarded a risk. There is nothing in the record that shows he was unaware of or failed to perceive the risk. Therefore, we hold that the trial court did not err when it refused to include a jury instruction on criminally negligent homicide.

## MELCHOR'S PRIOR VIOLENT ACTS

The defense called Melchor's widow, Rosemary Melchor, to the stand to testify about the victim's prior violent acts. In a hearing outside the jury, the trial court heard testimony from Mrs. Melchor about a protective order she obtained against Melchor and two 1996 assault charges, one of which resulted in a conviction. A basis for the protective order and one of the assault charges was the allegation that Melchor threw a butcher knife at Mrs. Melchor. The State objected on the grounds that the evidence was irrelevant and impermissible character evidence. The trial court ruled that defendant could offer Mrs. Melchor's testimony about only one of the assault charges. The court excluded testimony about the protective order and the assault involving the butcher knife.

The defendant asserts he was entitled to show he reasonably believed he was in danger when Melchor began to stab him, and the excluded evidence was offered to show his state of mind and that Melchor was acting in conformity with his violent character. The defendant relies on the so-called *Dempsey* line of cases, which held that reputation or specific act evidence is admissible to show a victim's character and demonstrate that either the defendant had a reasonable fear of the victim, or the victim was, in fact, the aggressor. However, this common law rule, as it developed, was superceded by the Rules of Evidence. *Mozon v. State*, 991 S.W.2d 841, 845 (Tex.Crim.App.1999). Under the Rules of Evidence, evidence of other crimes, wrongs, or acts are inadmissible to prove character conformity. Tex.R. Evid. 404(a); *Mozon*, 991 S.W.2d at 845. An exception to this general ban on character evidence is that a defendant may offer evidence of a victim's character or a pertinent character trait. Tex.R. Evid. 404(a)(2); *Mozon*, 991 S.W.2d at 845. Consequently, evidence of a victim's character for violence is admissible to show the victim was the first aggressor. *Mozon*, 991 S.W.2d at 845–46. A victim's extraneous acts of violence also are admissible to show the defendant's state of mind. Tex.R. Evid. 404(b); *Mozon*, 991 S.W.2d at 846. Therefore, while Rule 404(a) prohibits the use of extraneous acts to prove character conformity, such evidence may be admissible for purposes other than proving character if such evidence is relevant. *Mozon*, 991 S.W.2d at 846.

We review the trial court's ruling regarding the admissibility of evidence under an abuse of discretion standard. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex.Crim.App.2001). Defendant testified he did not know Melchor before the night in question; therefore, we fail to see how his state of mind on that night could have been affected by an alleged act by Melchor before that night. Further, Mrs. Melchor stated she did not see Melchor throw a knife at her; she never saw the knife; and Melchor never threatened her with a knife. She said someone told her what happened, and this, in part, formed the basis of her request for a protective order. Under these circumstances, we hold that the trial court did not abuse its discretion in excluding Mrs. Melchor's testimony about whether Melchor threw a butcher knife at her.

## CONCLUSION

We overrule defendant's issues on appeal, and affirm the trial court's judgment.