

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-12-00074-CR

JEFFERY CHARLES GREEN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 10-0400X

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

Jeffery Charles Green shot his wife, Shirlette Green, in the upper chest. She died shortly thereafter. A Harrison County jury convicted him of manslaughter, and he was sentenced to sixteen years' imprisonment and ordered to pay a $5,000.00 fine. On appeal, Green argues that the evidence is legally insufficient to show that his shot killed Shirlette, that the jury should have been given the lesser-included-offense instruction for criminally negligent homicide, and that evidence of Green's prior deadly conduct was erroneously admitted without sufficient pretrial notice from the State. We affirm the trial court's judgment because (1) sufficient evidence demonstrated that Shirlette died from Green's gunshot, (2) Green was not entitled to a jury issue on criminally negligent homicide, and (3) admission of Green's prior deadly conduct was harmless.

*(1) Sufficient Evidence Demonstrated that Shirlette Died from Green's Gunshot*

In evaluating legal sufficiency, we review all of the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found, beyond a reasonable doubt, the essential elements of manslaughter. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). We examine legal sufficiency under the direction of the *Brooks* opinion, while keeping in mind that the credibility of witnesses is the sole province of the jury and that we "must give deference to 'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences

2

from basic facts to ultimate facts.'" *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 318–19); *see Ehrhardt v. State*, 334 S.W.3d 849, 857 (Tex. App.— Texarkana 2011, pet. ref'd).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).[1] The indictment in this case alleged that Green, with intent to cause serious bodily injury to Shirlette, "committed an act clearly dangerous to human life that caused the death of said Shirelette [sic] Green, by shooting her with a firearm." In his first point of error, Green challenges only whether the State proved the causal link between his gunshot and Shirlette's death.

It is undisputed that Green shot Shirlette. Dispatcher Nikki Gillard received a 9-1-1 call from Green who frantically exclaimed, "[M]a'am, my gun accidentally went off in the house." Green admitted that he shot Shirlette "right above the chest" and that she was unconscious. Green explained that he was holding the gun because his neighbor "was telling me about a big snake was out there in the yard."[2] Police officers were dispatched to the Greens' home.

Officer Rob Farnham testified that Shirlette "was not responsive" when he arrived at the scene. Officer Justin Mills testified that Shirlette "was laid across the coffee table that was pushed back against the couch" and that Green was "on top of Mrs. Green," "naked, and he had

---

[1]The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.

[2]Earlier in the afternoon, neighbor Arletha Lusk had seen a snake in her yard. She told Green about the snake that evening, but testified that she did not ask Green to kill the snake for her.

his hand in her mouth." Green explained, and the 9-1-1 recording confirmed, that he was trying to keep Shirlette "from swallowing her tongue." A black revolver with a white handle was found "on the back of the sink behind where the faucet and handles are." Green told Farnham that the gun accidentally went off and that "it killed my wife."

When officers arrived at the scene, Shirlette was alive and was transported to a hospital. Later, Shirlette died. Officer David Lewis testified, "[I] had been on the scene for a little bit before I was informed that she had passed away." Officers Sarah Livingston and Lewis were physically present at Shirlette's autopsy and confirmed that a bullet was removed during the autopsy.

Dr. Robert Palmer, a witness for the State, became "unavailable due to an emergency," which required him to undergo surgery. The State wanted Palmer to testify about the "trajectory of the bullet and how it impacted [Shirlette's] body." During a hearing regarding the admission of autopsy photographs, the following transpired:

> [State's Attorney]: . . . And then we're going to show the picture of the organ, because it punctures the lung and the heart.

> THE COURT: Mr. Solomon, let's see if we can clean it up, and if you do, I'll have no problem with it.

> [State's Attorney]: If you'll line out what you want me to take out, Judge, we'll gladly do what we can to remove some of the --

> THE COURT: To be honest with you, I guess I don't know what organ I'm looking at.

> [Defense Counsel]: Well, and, Judge, I think that's a problem. We will stipulate that it lacerated her ascending aorta; we'll stipulate to the injuries that Dr. Palmer found; and we'll stipulate that that caused her death. I mean --

4

[State's Attorney]: Your Honor, regardless of whether he stipulates, we have a right to present the evidence . . . .

. . . .

[State's Attorney]: But that's -- obviously, we want to show Dr. Palmer the photograph and have him describe so the jury gets a full understanding of exactly where the bullet went and why it caused her death.

[Defense Counsel]: And, again, Your Honor, all of that is undisputed, agreed, and we'll enter into a stipulation. And I think if we have a situation like that, the need for that evidence is vastly lessened.

Palmer did not testify, but several autopsy photographs were shown to the jury.

On appeal, Green argues that, while "there was some indirect evidence that Shirlette Green was dead," due to Palmer's unavailability, there "was no testimony that the bullet discharged from the .22 revolver caused Shirlette Green's death." One of the elements the State had to prove here was that Green's actions caused Shirlette's death. *See Hutcherson v. State*, 373 S.W.3d 179, 187 (Tex. App.—Amarillo 2012, pet. ref'd). If the injuries caused by the defendant contributed to the victim's death, the defendant is responsible even though other contributing causes existed. *Id.* (citing *Wright v. State*, 388 S.W.2d 703, 706 (Tex. Crim. App. 1965)).

Shirlette was alive before being shot in the chest by Green. There is no suggestion that she was ill in any way or that any other cause threatened her. After shooting Shirlette, Green told the dispatcher that she was unconscious. Shirlette had a bullet in her chest and a pulse when she was located by first responders, but officers testified that she died shortly after her transport to the hospital. This evidence was legally sufficient for a rational jury to determine that the bullet wound caused Shirlette's death. *See Adams v. State*, 255 S.W.2d 513, 514 (Tex. Crim.

5

App. 1953) (evidence sufficient that "deceased was in good health and spirits prior to being shot through the neck with a forty-four caliber pistol, and that he fell when shot and soon died"); *see also Dempsey v. State*, 289 S.W.2d 238, 239 (Tex. Crim. App. 1956). Additionally, the record contains an oral stipulation that the bullet lacerated Shirlette's ascending aorta and caused her death. The evidence is legally sufficient to show that Shirlette died as a result of Green's gunshot.

*(2)     Green Was Not Entitled to a Jury Issue on Criminally Negligent Homicide*

During the charge conference, Green's counsel requested submission of criminally negligent homicide as a lesser-included offense. While that is a lesser-included offense, no evidence required that the lesser charge be submitted.

We apply the *Aguilar/Rousseau* test to determine whether an instruction on a lesser-included offense should be given to the jury. *Cavazos v. State*, No. PD-1675-10, 2012 WL 5348046, at *3 (Tex. Crim. App. Oct. 31, 2012) (citing *Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007); *McKinney v. State*, 207 S.W.3d 366, 370 (Tex. Crim. App. 2006); *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993)). First, we examine whether criminally negligent homicide is a lesser offense of manslaughter by "examin[ing] the elements of the lesser offense and decid[ing] whether they are functionally the same or less than those required to prove the charged offense." *Id.* at *4.

Green was convicted of manslaughter. For our purposes, the difference between manslaughter and criminally negligent homicide lies in the respective mental states for the offenses: recklessness versus criminal negligence. A person commits manslaughter if he or she

6

recklessly causes the death of an individual. TEX. PENAL CODE ANN. § 19.04(a) (West 2011). A person commits criminally negligent homicide if he or she causes the death of an individual by criminal negligence. TEX. PENAL CODE ANN. § 19.05 (West 2011).

A person acts recklessly when he or she "is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." TEX. PENAL CODE ANN. § 6.03(c) (West 2011). "The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all circumstances as viewed from the actor's standpoint." *Id*.

On the other hand, a person acts with criminal negligence when he or she "ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur." TEX. PENAL CODE ANN. § 6.03(d) (West 2011). "The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.*

An offense may be a lesser-included offense if it differs from the charged offense only in the respect that a less culpable mental state is sufficient to establish its commission. *Cavazos*, 2012 WL 5348046, at *4. That is the case here. Therefore, criminally negligent homicide is a lesser-included offense of manslaughter. *Stadt v. State*, 182 S.W.3d 360, 364 (Tex. Crim. App. 2005).

Next, we analyze "whether the evidence shows that if the Appellant is guilty, he is guilty only of the lesser offense." *Cavazos*, 2012 WL 5348046, at *3. "Every case in which someone

7

points a loaded gun at another does not require that a charge of criminally negligent homicide be given." *Thomas v. State*, 699 S.W.2d 845, 850 (Tex. Crim. App. 1985). "Nor does the allegation of accidental discharge necessarily raise the issue." *Id.*

Green held a loaded revolver in his hand, allegedly for the purpose of killing a snake. He pointed this revolver, which did not have a safety mechanism, toward his wife. Forensic scientist, John Beene, testified that "it takes maybe 6 pounds" of pressure to cause Green's revolver "to go off." He explained that having the gun cocked, with a finger on the trigger while the gun is pointed at someone was an act clearly dangerous to human life.

"The key to criminal negligence is not the actor's being aware of a substantial risk and disregarding it, but rather it is the failure of the actor to perceive the risk at all." *Montgomery v. State*, 369 S.W.3d 188, 193 (Tex. Crim. App. 2012). Thus, "[o]ther evidence raising the issue of whether or not a defendant was aware of the risk must be presented before such a charge is required." *Thomas*, 699 S.W.3d at 850; *Martinez v. State*, 87 S.W.3d 663, 666 (Tex. App.—San Antonio 2002, pet. ref'd).

After a discussion of the facts, which focuses on evidence demonstrating the accidental nature of the shooting, Green's brief concludes that "[t]aking all of this evidence together, including the statements to police, as a whole, it is some evidence that Green recklessly, and not intentionally, discharged the revolver."[3] We agree. However, there is no suggestion made, either in the brief or in the record, indicating that Green failed to perceive the risk of pointing a loaded weapon at his wife. "Before a trial judge is required to instruct on a lesser-included

---

[3]The brief mistakenly asserted that criminally negligent homicide requires a reckless culpability.

8

offense . . . , there must be evidence in the record that raises that lesser offense . . . as a rational alternative to the charge." *Cornet v. State*, 359 S.W.3d 217, 229–30 (Tex. Crim. App. 2012) (citing *Hall*, 225 S.W.3d at 536).[4] We find that, at best, the evidence "raised only the culpable mental state of recklessness, a *higher* culpable mental state than criminal negligence." *Guzman v. State*, 188 S.W.3d 185, 196 (Tex. Crim. App. 2006) (Keller, P.J., concurring). Therefore, the trial court did not err in denying Green's request to include criminally negligent homicide as a lesser-included offense. *See Trujillo v. State*, 227 S.W.3d 164, 168 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

*(3)      Admission of Green's Prior Deadly Conduct Was Harmless*

Before the testimony of Rodney Kirkland during the punishment phase of the trial, Green's counsel urged the trial court to exclude testimony about "an extraneous offense of deadly conduct" on the grounds that he was not given adequate notice of the offense. The State timely filed a notice of intent to introduce extraneous offenses, which included "Deadly Conduct committed on or about 12/16/07, Harrison County Sheriff's Office report #07-42004." The trial court noted this filing and overruled Green's objection.

We review the admission of extraneous-offense evidence under an abuse-of-discretion standard. *Heigelmann v. State*, 362 S.W.3d 763, 768 (Tex. App.—Texarkana 2012, pet. ref'd) (citing *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)). We uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.*

---

[4]There are two ways that this can be accomplished. First, "evidence may have been raised that refutes or negates other evidence establishing the greater offense." *Cavazos*, 2012 WL 5348046, at *5. This evidence must be "affirmative evidence," "not mere speculation," in an amount more than a scintilla, that the defendant did not meet the greater mens rea element. *Id.* "Second, the evidence presented regarding the defendant's awareness of the risk may be subject to two different interpretations, in which case the jury should be instructed on both inferences." *Id.*

Kirkland testified that he "observed a blue pickup following" him as he was "going down a lease road." When Kirkland arrived at his destination, Green exited the pickup and "said that a rock had flew off my truck and busted his windshield." Kirkland refused to give his name to Green, but "told him . . . that all he needed was the company name off the truck, the license plate number, and the truck number." Green walked back to his truck, "turned back around, and he had a machete in his hands." Kirkland testified that Green approached his truck, "jerked the door open, and he told me that I did not know who I was messing with, that—he was pretty angry and stuff." Kirkland "reached for the radio and called dispatch," prompting Green to leave. Kirkland reported the incident to police, but the record does not show that Green was convicted for this alleged offense.

> Section 3(g) of Article 37.07 of the Texas Code of Criminal Procedure states:

> On timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Evidence. If the attorney representing the state intends to introduce an extraneous crime or bad act that has not resulted in a final conviction in a court of record or a probated or suspended sentence, notice of that intent is reasonable only if the notice includes the date on which and the county in which the alleged crime or bad act occurred and the name of the alleged victim of the crime or bad act. The requirement under this subsection that the attorney representing the state give notice applies only if the defendant makes a timely request to the attorney representing the state for the notice.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(g) (West Supp. 2012). The State's notice meets the requirements for adequate notice with one exception, the name of the alleged victim.

Despite the wording of the statute, we have previously found that substantial compliance may be sufficient where the missing information can be otherwise ascertained. *McQueen v. State*, 984 S.W.2d 712, 715–16 (Tex. App.—Texarkana 1998, no pet.) (citing *Nance v. State*, 946

S.W.2d 490, 493 (Tex. App.—Fort Worth 1997, pet. ref'd)). In this case, the State provided Kirkland's name in a list of potential witnesses, but the list did not specify the substance of Kirkland's testimony. At trial, the State claimed that the offense report referenced in the notice was provided to Green, but this was denied by Green's counsel. The State argues that Green, "by simple use of the power of subpoena could have obtained the victim's name and a complete set of the facts contained in the officers' report." It is the State's obligation, not the defendant's, however, to provide the specific statutorily required information. *See James v. State*, 47 S.W.3d 710, 714 (Tex. App.—Texarkana 2001, no pet.).

Although the notice provision of Article 37.07, Section 3(g) of the Texas Code of Criminal Procedure is mandatory, failure to comply does not automatically constitute grounds for reversal; instead, we analyze whether admission of the evidence affected a substantial right of the defendant. TEX. R. APP. P. 44.2(b); *Luna v. State*, 301 S.W.3d 322, 326 (Tex. App.—Waco 2009, no pet.); *James*, 47 S.W.3d at 714.

The purpose of this section is "to avoid unfair surprise, so that the defendant will have adequate time to prepare for the extraneous offense evidence the state will present at trial." *James*, 47 S.W.3d at 713. Thus, we "examine the record to determine whether the deficient notice resulted from prosecutorial bad faith or prevented the defendant from preparing for trial." *Luna*, 301 S.W.3d at 326 (citing *Roethel v. State*, 80 S.W.3d 276, 281–82 (Tex. App.—Austin 2002, no pet.) (because "[t]he notice requirement found in section 3(g) . . . does not relate to the substantive admissibility of the evidence," "[t]he lack of notice does not render the evidence

11

inherently unreliable, but instead raises a question about the effect of procedural noncompliance")).

Although Green complained that adequate notice was not provided, Green does not argue that he was unfairly surprised by Kirkland's testimony.[5] The record specified that the extraneous offense was deadly conduct, that it was committed in Harrison County December 16, 2007, and that it was documented by police report number 07-42004. The State's witness list contained the alleged victim's name, and Green's counsel lodged an objection before Kirkland's testimony, espousing his belief that "this witness is going to testify to an incident concerning deadly conduct." This suggests that Green was aware of the name of the alleged victim. Further, there was no assertion that counsel was unprepared to cross-examine Kirkland, and there was no request for a continuance. Because the record does not show that the deficient notice impaired Green's ability to prepare for Kirkland's testimony, the deficient notice was not harmful.

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice


Date Submitted:     November 28, 2012
Date Decided:      January 4, 2013

Do Not Publish

---

[5]Also, Green does not suggest, and we do not detect, that there was any prosecutorial bad faith in failing to comply with Article 37.07, Section 3(g) of the Texas Code of Criminal Procedure.

12